**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JUNE E. SCOTT and**
**DAVID LANDON MURPHY,**

      **Plaintiffs,**

**v.**                                  **No. CIV 11-1084 JP/ACT**

**HSBC BANK USA N.A., as Trustee for the**
**Registered Holders of Nomura Home Equity Loan**
**Inc., Home Equity Loan Trust, Series 2007-3 Asset-**
**Backed Certificates, a Delaware corporation;**
**OCWEN LOAN SERVICING, and DOES 1 to 10,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      Plaintiffs June E. Scott and David Landon Murphy filed a Complaint of Unlawful

Foreclosure in federal court after HSBC Bank USA, N.A., obtained an order of foreclosure

against June Scott in New Mexico district court.[1] Defendants, HSBC Bank USA, N.A., and

Ocwen Loan Servicing, seek dismissal of Plaintiffs' Complaint on multiple grounds. First,

Defendants filed a Rule 12(b)(6) Motion, arguing, among other things, that Plaintiffs failed to

state any claim for which relief can be granted.[2] Second, Defendants filed a Rule 12(b)(1)

---

[1] On December 9, 2011, Plaintiffs filed a COMPLAINT OF UNLAWFUL
FORECLOSURE (Doc. No. 1). Defendants have not filed an answer.

[2] On January 30, 2012, Defendants filed DEFENDANTS' MOTION TO DISMISS, OR
IN THE ALTERNATIVE, FOR OTHER RELIEF (Doc. No. 5) and MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR OTHER RELIEF (Doc. No. 7) ("Rule 12(b)(6) Motion,"
collectively). On February 29, 2012, Plaintiffs filed a RESPONSE TO DEFENDANTS
MOTIONS TO DISMISS (Doc. No. 18) ("Response"). On March 12, 2012, Defendants filed
DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR OTHER RELIEF (Doc. No. 20).

Motion, asking the Court to dismiss this case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.[3] On February 29, 2012, Plaintiffs filed a consolidated Response to Defendants' motions to dismiss. Doc. No. 18. On May 15, 2012, Plaintiffs filed two motions, a "Motion to Deny Defendants 12b Motions,"[4] and a "Motion for Emergent Temporary Orders."[5]

On June 26, 2012, the Court held a motion hearing. Plaintiff David Murphy appeared pro se on behalf of Plaintiffs. Attorney Stephen D. Ingram represented Defendants. Plaintiff June Scott was not present. At the hearing, David Murphy informed the Court that June Scott was unable to attend the hearing due to illness.

The Court has considered the record in this case, the parties' briefing, and the parties' oral arguments. Additionally, the Court takes judicial notice of several orders filed by the New Mexico district court in the underlying foreclosure case. *See St. Louis Baptist Temple, Inc. v.*

---

[3] On February 2, 2012, Defendants filed DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) (Doc. No. 13) and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) (Doc. No. 14) ("Rule 12(b)(1) Motion," collectively). On February 29, 2012, Plaintiffs filed a RESPONSE TO DEFENDANTS MOTIONS TO DISMISS (Doc. No. 18) (Response). On March 12, 2012, Defendants filed DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) (Doc. No. 21).

[4] On May 15, 2012, Plaintiffs filed a MOTION TO DENY DEFENDANTS 12b MOTIONS (Doc. No. 36) and a MEMORANDUM OF POINTS AND AUTHORITIES (Doc. No. 38). On May 25, 2012, Defendants filed DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DENY DEFENDANTS' 12(b) MOTIONS (Doc. No. 42). On June 4, 2012, Plaintiffs filed a REPLY TO DEFENDANTS RESPONSE TO MOTION TO DENY DEFENDANTS 12(b) MOTIONS (Doc. No. 45).

[5] On May 15, 2012, Plaintiffs filed a MOTION FOR EMERGENT TEMPORARY ORDERS (Doc. No. 37), and a MEMORANDUM OF POINTS AND AUTHORITIES (Doc. No. 38). On May 25, 2012, Defendants filed DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EMERGENT TEMPORARY ORDERS (Doc. No. 41). On June 4, 2012, Plaintiffs filed a REPLY TO DEFENDANTS RESPONSE TO MOTION FOR EMERGENT TEMPORARY ORDERS (Doc. No. 44).

*FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Fed. R. Evid. 201 (allowing courts to take judicial notice of facts "at any stage of the proceeding" if the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

The Court concludes that Plaintiffs' Complaint should be dismissed in its entirety. Most of Plaintiffs' claims constitute a direct attack on a final judgment of the state court and therefore must be dismissed under Rule 12(b)(1) and the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction. The remainder of Plaintiffs' allegations fail to state a plausible claim for relief and therefore should be dismissed under Rule 12(b)(6) for failure to state a claim. Thus, Defendants' Rule 12(b)(1) Motion (Doc. No. 13) and Defendants' Rule 12(b)(6) Motion (Doc. No. 5) will each be granted in part and denied in part. Plaintiff's Motion to Deny Defendants' Rule 12(b) Motions (Doc. No. 36) and Plaintiffs' Motion for Emergent Temporary Orders (Doc. No. 37) will be denied.

## BACKGROUND

### A.  State Court Proceedings in Case No. D-101-CV-200901299

In the Complaint, Plaintiffs reference a foreclosure case, Case No. D-101-CV-200901299, that HSBC Bank USA, N.A., filed in the First Judicial District Court, County of Santa Fe, State of New Mexico, against June E. Scott, the Mortgage Electronic Registration Systems Inc. (solely as nominee for the lender), and the New Mexico Department of Taxation and Revenue. On January 11, 2010, the state court granted a default judgment in favor of HSBC Bank against June Scott. *See* Doc. No. 1-25, at 1. June Scott filed a Motion to Set Aside Default

3

and Subsequent Sale. *Id.* On February 24, 2011, the First Judicial District Court entered an Order setting aside the default judgment as "improvidently granted." *Id.*

On September 2, 2011, June Scott filed a Motion to Dismiss, asking the state court to dismiss all claims brought by HSBC Bank. Doc. No. 7-2. June Scott argued that (1) HSBC Bank was "not a party of interest" because it was "legally impossible" for HSBC Bank "to have acquired a lien" on June Scott's property "through an unbroken chain of title"; (2) HSBC Bank did not have standing to bring the foreclosure action against June Scott because HSBC Bank was not a "holder in due course" of the original mortgage note; and (3) HSBC Bank has never held a beneficial interest in the note because the mortgage note upon which HSBC Bank attempted to foreclose had "been securitized into a pool of funds and therefore is no longer a negotiable instrument." *Id.*

On October 7, 2011, the First Judicial District Court entered a DEFAULT JUDGMENT, DECREE OF FORECLOSURE, AND APPOINTMENT OF SPECIAL MASTER (Foreclosure Judgment). *See* Doc. No. 7-1, at 1. In the Foreclosure Judgment, the court (1) found that it was "in possession of the original Note"; (2) found June Scott in default on her mortgage, owing a total of $568,738.60; (3) granted a default judgment against June Scott; (4) foreclosed on the property at issue, 2932 Corte Del Becerro, Santa Fe, NM 87505; and (5) appointed Jeffrey Lake as Special Master to sell the property at public auction. Doc. No. 7-1. The Foreclosure Judgment expressly states that it is a "final Judgment" but that the state court will retain jurisdiction "for the purpose of confirming the foreclosure sale; assisting the purchaser at the foreclosure sale . . .; determining the rights of the parties in and to any surplus monies realized from the foreclosure sale; entering a deficiency judgment upon approval of the Special Master's Report subsequent to the foreclosure sale, if necessary; and for determining all other issues presented in this action and

4

not specifically ruled on in this Judgment." Doc. No. 7-1, at 5.

On June 8, 2012, the First Judicial District Court entered an ORDER APPROVING

REPORT OF SPECIAL MASTER, CONFIRMING SALE, AND AWARDING DEFICIENCY

JUDGMENT ("Order Confirming Sale"). In the Order Confirming Sale, the court confirmed the

foreclosure sale of the Santa Fe property, which had occurred on December 13, 2011, and

awarded HSBC Bank a deficiency judgment against June Scott in the amount of $291,883.44.

**B.**   **Federal Court Proceedings in this Case, No. CIV 11-1084 JP/ACT**

On December 9, 2011, Plaintiffs filed, pro se, their Complaint of Unlawful Foreclosure

(Doc. No. 1). Plaintiffs' Complaint includes two specifically enumerated claims: (1)

"Defendants breach of Plaintiffs statutorily and Constitutionally protected rights of privacy," and

(2) "Defendants continuing deceptive and fraudulent conduct with the sole intent to deprive

Plaintiffs of their rights to subject property." Doc. No. 1, at 2.

Plaintiffs also allege that "[t]here are Federal Statutes that have been violated" and

attempt to bring two claims under the Racketeer Influenced and Corrupt Organizations Act

("RICO"). *Id.* Plaintiffs state in the Complaint that their first RICO claim is that Defendants

violated 18 U.S.C. §§ 242 and 243 by fraudulently converting another's real property. *Id.*

Plaintiffs also allege that Defendants violated RICO, 18 U.S.C. §§ 1341, 1343, 1961, and 1962,

by "using the U.S. Mail more than twice to collect an unlawful debt." *Id.*

Although Plaintiffs state that they are bringing federal statutory and constitutional claims,

including two RICO claims and privacy claims, Plaintiffs provide no supporting facts for these

claims. Plaintiffs allege only that Defendants have "a history of providing falsified documents to

Courts to circumvent the law," as demonstrated by Plaintiffs' Exhibit B (Doc. No. 1-13) (a

printout from the website "stopforeclosurefraud.com"), and Plaintiffs' Exhibit C (Doc. No. 1-14)

(a PowerPoint presentation from the Florida Attorney General's Office titled "Unfair, Deceptive, and Unconscionable Acts in Foreclosure Cases").

Following this description of their claims, Plaintiffs dedicate the remaining eight pages of the twelve-page Complaint to their argument that Defendants had "no legal right to foreclose on the subject property." *See* Doc. No. 1, at 5-12. In Plaintiffs' view, Defendants "have not demonstrated legal standing by providing to Plaintiff[s] that they are in fact the true Holder-in-Due-Course," and have not shown that Defendants possess "the original authenticated 'Note' and 'Mortgage,' complete with actual authenticated time sensitive notarized endorsements, that are not forgeries aka 'robo signed,' demonstrating an unbroken chain of title." Doc. No. 1, at 4. In their prayer for relief, Plaintiffs repeat their position that Defendants had no standing to bring a foreclosure action, that Defendants never held a beneficial interest in the note, and that Defendants' attempts "to legally foreclose upon the subject property are a complete fabrication and fiction." *Id.* at 12. To remedy these perceived injuries, Plaintiffs ask the Court to "order Defendants to remove their security interest in the subject property." *Id.* Plaintiffs also seek "treble damages for fraud." *Id.*

On January 30, 2012, Defendants filed their Rule 12(b)(6) Motion. *See* Doc. Nos. 5, 7. Defendants argue that Plaintiffs' claims related to the state court foreclosure proceeding are barred under the preclusion doctrines of collateral estoppel and res judicata. Doc. No. 7, at 3. Defendants contend that Plaintiffs have failed to plead sufficiently any claim under RICO, 18 U.S.C. §§ 1961-68. Doc. No. 7, at 6-11. To the extent that Plaintiffs allege that Defendants filed false pleadings in state court, Defendants argue that Plaintiffs' claims are barred by the litigation privilege. Doc. No. 7, at 11-13. Finally, in response to Plaintiffs' citation of civil rights statute 18 U.S.C. § 242, Defendants argue that this claim should be dismissed as a matter of law because

6

Defendants are private parties and no state action supports a civil rights claim. Doc. No. 13-15. Alternatively, Defendants request relief under either (1) the *Colorado River* abstention doctrine, (2) Fed. R. Civ. Pro. 12(e) (motion for a more definite statement), (3) Fed. R. Civ. Pro. 12(f) (motion to strike), or (4) 28 U.S.C. 1447(c) (remand to state court). *See* Doc. No. 7, at 15-20.

On February 2, 2012, Defendants filed their Rule 12(b)(1) Motion. Doc. Nos. 13, 14. Defendants argue that, under the *Rooker-Feldman* doctrine, the First Judicial District Court's Foreclosure Judgment, entered October 7, 2011, deprives this Court of subject matter jurisdiction over Plaintiffs' Complaint. Doc. No. 14, at 1-3. In Defendants' view, this Court lacks subject matter jurisdiction because Plaintiffs' Complaint constitutes an attack in federal court of a final judgment entered by a state court. *Id.* at 4.

On February 29, 2012, Plaintiffs filed a consolidated Response to Defendants' motions to dismiss. Doc. No. 18. Plaintiffs ask the Court to deny Defendants' motions, or, in the alternative, to construe the motions as motions for summary judgment under Rule 56 and Rule 12(d). Doc. No. 18, at 9.

On April 2, 2012, Magistrate Judge Alan C. Torgerson entered an ORDER STAYING DISCOVERY (Doc. No. 28), which stayed discovery pending this Court's ruling on Defendants' Motions to Dismiss (Doc. Nos. 5 and 13). Nonetheless, on May 7, 2012, Plaintiffs filed a Motion for Production of Discovery Documents (Doc. No. 29) and an Affidavit to Set Aside Defendants Motion to Dismiss (Doc. No. 30). On May 9, 2012, Defendants filed Defendants' Motion to Strike Discovery Submitted by Plaintiffs (Doc. No. 35).

On May 15, 2012, Plaintiffs filed their Motion to Deny Defendants 12b Motions (Doc. No. 36) and Motion for Emergent Temporary Orders (Doc. No. 37), along with a Memorandum of Points and Authorities (Doc. No. 38). In the Motion to Deny Defendants' 12(b) Motions,

Plaintiffs argue that the Court should deny Defendants' motions to dismiss because Defendants admitted in the Joint Status Report and Provisional Discovery Plan (Doc. No. 25) that Defendants "deny all allegations made by Plaintiffs." Doc. No. 36. Therefore, Plaintiffs argue, the Court should adjudicate the contested allegations in Plaintiffs' Complaint. In the Motion for Emergent Temporary Orders, Plaintiffs argue that discovery should be resumed and ask the Court to order "Defendants to produce the 'original wet signed note.'" Doc. Nos. 37, 38.

On July 18, 2012, Plaintiffs filed a NOTICE OF REMOVAL (Doc. No. 50). In the "Notice of Removal," Plaintiffs state that they "hereby remove[] the removed case to the United States of America, District Court, Southern District of Alabama, Case No. CV:2012-0071715 WWP." Doc. No. 50, at 1. The only fact Plaintiffs provide in the "Notice of Removal" is their assertion that they own real property in Santa Fe. *Id.* at 2.

On July 20, 2012, Defendants moved the Court to strike Plaintiffs' July 18, 2012, "Notice of Removal."[6] Defendants argue that Plaintiffs' "Notice of Removal" is a nullity because a notice of removal can be used only to remove a case from state court to federal court. Motion to Strike at 2. Additionally, Defendants argue that Plaintiffs' "Notice of Removal" cannot operate to transfer venue of this case or to consolidate this case with another lawsuit. *Id.* at 1.

## DISCUSSION

### A.     Defendants' Rule 12(b)(1) Motion: *Rooker-Feldman* Doctrine

In their Rule 12(b)(1) Motion, Defendants ask the Court to dismiss Plaintiffs' Complaint under the *Rooker-Feldman* doctrine. Because it implicates the Court's subject matter jurisdiction, the Court will address Defendant's Rule 12(b)(1) Motion before addressing

---

[6] On July 20, 2012, Defendants filed DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' "NOTICE OF REMOVAL" (Doc. No. 51) (Motion to Strike).

8

Defendants' Rule 12(b)(6) Motion.

1.    ***Rooker-Feldman* Doctrine**

"The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (holding that the federal district court lacks jurisdiction to void a state-court judgment because doing so would constitute an unconstitutional exercise of appellate jurisdiction); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding that the federal district court has "no authority to review final judgments of a state court in judicial proceedings").

The United States Supreme Court reformulated the *Rooker-Feldman* doctrine in the case of *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). *See Campbell v. City of Spencer*, No. 11-6041, ___ F.3d ___, 2012 WL 2362613, *4 (10th Cir. June 22, 2012) (discussing the reformulation of the doctrine). In *Exxon Mobil*, the Supreme Court explained that the *Rooker-Feldman* doctrine "ha[d] sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." 544 U.S. at 283. The Supreme Court held that the *Rooker-Feldman* doctrine must be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

The Supreme Court also explained a difference between the *Rooker-Feldman* doctrine

and the preclusion doctrines. The *Rooker-Feldman* doctrine applies to situations where a state court judgment has been rendered before the federal proceedings have been commenced. But where there are concurrent state court and federal court proceedings and the state court enters a judgment while the federal case is still pending, the federal court should apply the preclusion doctrines of res judicata and collateral estoppel instead of the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 293.

After *Exxon Mobil*, it is clear that the *Rooker-Feldman* doctrine prohibits federal district courts from exercising what is, in effect, appellate jurisdiction over state-court judgments. *See Campbell*, 2012 WL 2362613, at *5 ("Appellate review—the type of judicial action barred by *Rooker-Feldman*—consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." (quotation marks and citation omitted)). But "[w]hen the state-court judgment is not itself at issue, the doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action." *Id.* at *2 (quotation marks and citation omitted).

The Tenth Circuit's application of these principles in *Campbell* is instructive. In *Campbell*, officers executed a warrant and seized forty-four horses belonging to Campbell after receiving a report of animal cruelty. *Id.* at *1. The City of Spencer and the Town of Forest Park brought a forfeiture action against Campbell in Oklahoma County District Court. *Id.* The state court ordered forfeiture of Campbell's horses and set a $68,305 bond to cover the costs of caring for the horses. *Id.* Campbell appealed to the Oklahoma Court of Civil Appeals and lost. *Id.*

Campbell subsequently filed suit in the United States District Court for the Western District of Oklahoma. *Id.* at *2. Campbell alleged that the defendants "(1) violated her rights under the Fourth Amendment by unlawfully searching her property and seizing her horses; (2)

10

violated her Fifth Amendment rights to due process and just compensation by confiscating the

horses; and (3) violated her Eighth Amendment protection against excessive fines by obtaining

an unreasonable bond." *Id.* The federal district court dismissed Campbell's claims under the

*Rooker-Feldman* doctrine, concluding that Campbell's claims were "inextricably intertwined

with the state court judgment" and reasoning that Campbell's "claims were all based on a single

injury[,] the loss of her horses, and that the relief sought would necessarily undo the Oklahoma

[state] court's judgment." *Id.* (quotation marks and citation omitted) (second alteration in

original).

On appeal, the Tenth Circuit reversed the district court in part, holding that the district

court erred by dismissing Campbell's Fourth Amendment claims under the *Rooker-Feldman*

doctrine. *Id.* at *1. In so holding, the Tenth Circuit rejected the district court's conclusion that it

lacked jurisdiction over the Fourth Amendment claims because those claims were "inextricably

intertwined with the state court judgment." *See id.* at *2. The Tenth Circuit opined that the

"inextricably intertwined" standard is unworkable and noted that the Supreme Court eschewed

the "inextricably intertwined" standard in *Exxon Mobil*. *Id.* at *3-5. Instead, a federal court

should focus on whether adjudicating a claim will require the court to review a state-court

judgment. Campbell's Fourth Amendment claims arose from pre-forfeiture events and could

have been raised "even if there had been no state-court proceeding." *Id.* at *1, 7. Accordingly,

the district court should not have dismissed Campbell's Fourth Amendment claims under

*Rooker-Feldman*. *Id.* at *7.

The Tenth Circuit upheld the district court's dismissal of Campbell's Fifth and Eighth

Amendment claims under the *Rooker-Feldman* doctrine, reasoning that those claims directly

challenged the state-court judgment. *Id.* at *1. The Court explained that Campbell's claim under

11

the Fifth Amendment was "a direct attack on the state court's judgment" because Campbell alleged "that the defendants deprived her of due process by unconstitutionally using Oklahoma's *forfeiture procedures*." *Id.* at *6. Likewise, in her Eighth Amendment claim Campbell complained of the state court's actions by alleging that the bond imposed by the state court constituted an excessive, unconstitutional fine. *Id.* at *7. Because the state court's judgment caused Campbell's asserted injuries, including imposition of the bond and forfeiture of the horses, the *Rooker-Feldman* doctrine applied. *Id.* at *6-7.

> **2.    Plaintiffs' Claims that Challenge the State Court Foreclosure Judgment Will Be Dismissed under the *Rooker-Feldman* Doctrine.**

Defendants argue that the state court's entry of the Foreclosure Judgment on October 7, 2011, precludes this Court from exercising subject matter jurisdiction over Plaintiff's Complaint. Doc. No. 14, at 2-3. In Defendant's view, Plaintiff's primary allegation is that the state court should not have entered the Foreclosure Judgment against June Scott because HSBC Bank did not have standing to sue on the note and mortgage executed by Scott. *Id.* at 3. Thus, Defendants contend that Plaintiff's Complaint is in reality a challenge to the state-court judgment.

In the Response, Plaintiffs argue that their Complaint raises "a fresh issue that was never decided by or ruled upon by the state district court." Doc. No. 18, at 4-5. In the Foreclosure Judgment, the state court found that the court was in possession of the original mortgage note. Doc. No. 7-1. Plaintiffs argue, however, that the state court failed to address the authenticity of the alleged original note. Doc. No. 18, at 4. Thus, Plaintiffs contend that the Court should consider the merits of their Complaint.

The Court concludes that the *Rooker-Feldman* doctrine precludes the Court from exercising subject matter jurisdiction over the majority of the claims and allegations in

Plaintiffs' Complaint. The overriding thrust of Plaintiffs' Complaint is that Defendants had "no

legal right to foreclose on the subject property." *See* Doc. No. 1, at 5-12. Elaborating on this,

Plaintiffs argue that Defendants did not have standing to bring the foreclosure action because

Defendants failed to prove that they (1) are holders-in-due-course of the note and mortgage, (2)

possess the original note and mortgage, and (3) have an unbroken chain of title. Doc. No. 1, at 4.

In order to consider these claims, the Court would have to review the state-court judgment,

which the Court cannot do under the *Rooker-Feldman* doctrine. As in *Campbell*, where the

plaintiff's Fifth and Eighth Amendment claims challenged the forfeiture and bond ordered by the

Oklahoma court, Plaintiffs' allegations in this case constitute a challenge to the Foreclosure

Judgment entered by the New Mexico district court. Accordingly, the Court concludes that it

lacks jurisdiction to consider (1) whether Defendants had a legal right to foreclose on the

property, (2) whether Defendants had standing to bring the foreclosure action, (3) whether

Defendants possess the original note and mortgage, (4) whether Defendants have an unbroken

chain of title, or (5) the authenticity of the note produced by Defendants and relied on by the

state court.

3. **Plaintiffs' Federal Statutory Claims and Constitutional Claims Will Not Be Dismissed under the *Rooker-Feldman* Doctrine.**

In the Complaint, Plaintiffs appear to allege that Defendants violated several federal

statutes. Plaintiffs state their federal statutory claims as follows:

> There are Federal Statutes that have been violated. The First RICO claim, USC 18§ 242, 243 fraudulent Conversion of anothers real property. The Second RICO claim, by using the U.S. Mail more than twice to collect an unlawful debt is also in violation of 18 U.S.C.§§ 1341, 1343, 1961 and 1962 and grounds for the 2nd RICO claim.

Doc. No. 1, at 2. The Court cannot ascertain which of Plaintiffs' factual allegations, if any,

correspond to Plaintiffs' purported federal statutory claims. The Court concludes that it cannot

dismiss these claims under the *Rooker-Feldman* doctrine because it is unclear whether the claims

constitute an attack on the underlying state-court judgment.

Plaintiffs also allege in the Complaint that "Plaintiff's claim is A) Defendants breach of

Plaintiffs statutorily and Constitutionally protected rights of privacy." Doc. No. 1, at 2. Plaintiffs

do not appear to have alleged any facts in support of their purported privacy claims. The Court

concludes that dismissal of Plaintiffs' privacy claims under the *Rooker-Feldman* doctrine is not

appropriate because it is not clear whether the claims would require the Court to review the

state-court judgment.

**B.    Defendants' Rule 12(b)(6) Motion: Failure to State a Claim**

**1.    Standard under Rule 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a

complaint for "failure to state a claim upon which relief can be granted."  In ruling on a Rule

12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true, viewing

the allegations in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090,

1098 (10th Cir. 2009). Rule 12(b)(6) requires a plaintiff to set forth in the complaint the grounds

for the plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic

recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A plaintiff's "factual allegations must be enough to raise a right to relief above the

speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper

where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that

is plausible on its face." *Id.* at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows

14

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quotation marks and citations omitted).

Pro se pleadings are interpreted liberally, *see Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993), but a pro se plaintiff must comply with the basic requirements of the Federal Rules of Civil Procedure, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Therefore, notwithstanding the liberal construction given to pro se filings, a pro se plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim. See *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

**2.     Plaintiffs' RICO Claims Will Be Dismissed for Failure to State a Claim.**

Plaintiffs appear to bring two claims under RICO. *See* Doc. No. 1, at 2 (referring to a first RICO claim and a second RICO claim). Plaintiffs state that their first RICO claim is one for fraudulent conversion of real property under 18 U.S.C. §§ 242 and 243. The first statute Plaintiffs cite, 18 U.S.C. § 242, is titled "Deprivation of Rights under Color of Law" and provides in part,

[w]hoever, under *color of law* . . . willfully subjects any person. . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both[.]

(Emphasis added.)

15

Defendants ask the Court to dismiss Plaintiffs' 18 U.S.C. § 242 claim because there is no state action to support a civil rights claim. The Court agrees that this claim should be dismissed for failure to state a claim. Defendants are private parties and have not acted "under color of law." *See Torres v. First State Bank of Sierra Cnty.*, 588 F.2d 1322, 1325-26 (10th Cir. 1978) (explaining that there was no action taken "under color of law" in a case between two private parties, a debtor and a bank, even though the state court entered an order that may have violated the debtor's constitutional right to procedural due process). Plaintiffs' 18 U.S.C. § 242 claim will be dismissed for failure to state a claim.

The second statute Plaintiffs cite, 18 U.S.C. § 243, is titled "Exclusion of Jurors on Account of Race or Color," and provides that

> No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; and whoever, being an officer or other person charged with any duty in the selection or summoning of jurors, excludes or fails to summon any citizen for such cause, shall be fined not more than $5,000.

Because there has been no jury trial in this case, the Court concludes that Plaintiffs have failed to state a plausible claim to relief under 18 U.S.C. § 243. Plaintiffs claim under 18 U.S.C. § 243 will be dismissed for failure to state a claim.

Plaintiffs articulate their second RICO claim by alleging that Defendants used "the U.S. Mail more than twice to collect an unlawful debt . . . in violation of 18 U.S.C. §§ 1341, 1343, 1961 and 1962." Doc. No. 1, at 2. "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a), (b), & (c)). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any "act which is indictable"

16

under federal law, including mail fraud. "These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'" *Tal*, 453 F.3d at 1261 (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999)).

Construing Plaintiffs' Complaint liberally, it appears to the Court that Plaintiffs may be alleging that Defendants violated RICO, 18 U.S.C. § 1962, and engaged in the predicate act of mail fraud. In order to sufficiently plead the predicate act of mail fraud, a plaintiff must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Tal*, 453 F.3d at 1263. Additionally, in order to adequately plead fraud, a plaintiff must meet the heightened pleading requirement set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. A plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.* (quotation marks, citations, and brackets omitted).

Although Plaintiffs' Complaint includes a conclusory allegation that Defendants used "the U.S. Mail more than twice to collect an unlawful debt" in violation of RICO, Plaintiffs' Complaint is devoid of factual support for their claim that Defendants engaged in mail fraud or otherwise violated RICO. Plaintiffs have not met the pleading standard required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, *Ashcroft v. Iqbal*, 556 U.S. 662, or Rule 9(b). Because Plaintiffs have not plead any facts that would support the elements of a cognizable RICO claim, the Court will dismiss Plaintiffs' purported RICO claims for failure to state a claim.

17

**3.      Plaintiffs' Privacy Claims Will Be Dismissed for Failure to State a Claim.**

In the Complaint, Plaintiffs state that "Plaintiff's claim is A) Defendants breach of Plaintiffs statutorily and Constitutionally protected rights of privacy." Doc. No. 1, at 2. The Court has reviewed Plaintiffs' Complaint and is unable to discern which, if any, of Plaintiffs' factual allegations and conclusory statements correspond to Plaintiffs' purported privacy claims. The Court concludes that Plaintiffs have failed to state a plausible claim that Defendants violated Plaintiffs' right to privacy, and Plaintiffs' privacy claims will be dismissed for failure to state a claim.

**C.      <u>Plaintiffs' Motion to Deny Defendants' Rule 12(b) Motions Will Be Denied.</u>**

On May 15, 2012, Plaintiffs moved the Court to deny Defendants' Rule 12(b)(1) Motion and Defendants' Rule 12(b)(6) Motion. Doc. Nos. 36, 38. The Court has concluded that Defendants' Rule 12(b)(1) Motion should be granted in part and denied in part, and that Defendants' Rule 12(b)(6) Motion should be granted in part and denied in part. Accordingly, Plaintiffs' Motion to Deny Defendants' Rule 12(b) Motions will be denied.

**D.      <u>Plaintiffs' Motion for Emergent Temporary Orders Will Be Denied.</u>**

On May 15, 2012, Plaintiffs filed a Motion for Emergent Temporary Orders. Doc. Nos. 37, 38. Despite the fact that Magistrate Judge Torgerson stayed discovery pending the Court's resolution of Defendants' motions to dismiss, Plaintiffs argue that discovery should be resumed and ask the Court to order "Defendants to produce the original 'wet signed note.'" Doc. Nos. 37, 38. The Court has concluded that it lacks subject matter jurisdiction to consider Plaintiff's claims regarding the First Judicial District Court's Foreclosure Judgment or the authenticity of the mortgage note relied on by the state court. Accordingly, Plaintiffs' Motion for Emergent Temporary Orders will be denied.

18

**E.**   **Plaintiffs Have Not Removed this Case to the Southern District of Alabama**.

On July 18, 2012, Plaintiffs filed a "Notice of Removal" (Doc. No. 50), stating that Plaintiffs have removed this case to the Southern District of Alabama. In the "Notice of Removal," Plaintiffs refer to case number CV:2012-0071715 WWP.[7] As legal authority for the removal, Plaintiffs cite 28 U.S.C. § 1441, which governs removal of cases from state court to federal court. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

Having reviewed Plaintiff's "Notice of Removal," the Court concludes that Plaintiff's "Notice of Removal" is totally devoid of merit and should be stricken from the record. Plaintiffs cannot, and have not, removed this case from the United States District Court for the District of New Mexico to the United States District Court for the Southern District of Alabama. And although the Court may, on motion and hearing, consider a change of venue from one federal district court to another federal district court, *see* 28 U.S.C. § 1404(a) and (b), the Court concludes that a change of venue is not justified under the circumstances of this case. A change of venue may be granted "for the convenience of the parties" or "in the interest of justice." 28 U.S.C. § 1404(a). In the Notice of Removal, Plaintiffs state only that they own real property in Sante Fe, New Mexico; Plaintiffs have not justified a change of venue to Alabama. Doc. No. 50,

---

[7] The Court recognizes that Plaintiffs may have filed a new lawsuit in the Southern District of Alabama. However, in the Motion to Strike, Defendants assert that as of July 20, 2012, the Southern District of Alabama had no record of Case No. CV:2012-0071715 WWP. Motion to Strike at 1 n.1.

19

at 2.

As the Court was preparing to file this Memorandum Opinion and Order and to strike Plaintiffs' "Notice of Removal," Defendants filed their Motion to Strike (Doc. No. 51), which has merit. Accordingly, Defendants' Motion to Strike will be granted, and Plaintiffs' "Notice of Removal" (Doc. No. 50) will be stricken.

**IT IS ORDERED THAT:**

(1)     Plaintiffs' COMPLAINT OF UNLAWFUL FORECLOSURE (Doc. No. 1) is dismissed in its entirety;

(2)     DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) (Doc. No. 13) is GRANTED IN PART, in that the Court will dismiss without prejudice for lack of subject matter jurisdiction Plaintiffs' claims challenging the final judgment of the state court, including Plaintiffs' claims that (1) Defendants had no legal right to foreclose on the property, (2) Defendants lacked standing to bring the foreclosure action, (3) Defendants have not shown that they possess the original note and mortgage, (4) Defendants do not have an unbroken chain of title, and (5) that Defendants failed to produce an authentic note or mortgage;

(3)      DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) (Doc. No. 13) is DENIED IN PART with regard to any federal statutory or constitutional claims asserted by Plaintiffs, including any claim for violation of Plaintiffs' right to privacy and any claims under 18 U.S.C.§§ 242, 243, 1341, 1343, 1961, or 1962;

(4)   DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR OTHER

RELIEF (Doc. No. 5) is GRANTED IN PART, in that all federal statutory and

constitutional claims asserted by Plaintiffs, including any claim for violation of

Plaintiffs' right to privacy and any claims under 18 U.S.C.§§ 242, 243, 1341, 1343, 1961,

or 1962, are dismissed for failure to state a claim;

(5)   DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR OTHER

RELIEF (Doc. No. 5) is DENIED IN PART with regard to Plaintiffs' other claims and

allegations challenging the final judgment of the state court because those claims have

been dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction;

(6)   Plaintiffs' MOTION TO DENY DEFENDANTS 12b MOTIONS (Doc. No. 36) is

DENIED;

(7)   Plaintiffs' MOTION FOR EMERGENT TEMPORARY ORDERS (Doc. No. 37) is

DENIED; and

(8)   DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' "NOTICE OF REMOVAL"

(Doc. No. 51) is GRANTED; and

(9)   Plaintiffs' NOTICE OF REMOVAL (Doc. No. 50) is stricken.

_____

UNITED STATES DISTRICT COURT JUDGE